## No. 13,091.

## LOUIS SINCER ET ALS. VS. W. D. ALVERSON AND W. D. ALVERSON COMPANY, LIMITED.

### SYLLABUS.

The provisions of Act 159 of 1898, authorize the judges of the District Court throughout the State, and of the Civil District Court for the Parish of Orleans, to appoint receivers to take charge of the property and business of corporations, at the instance of any stockholder, or creditor, when the directors, or other officers of the corporation are jeopardizing the rights of stockholders or creditors, by grossly mismanaging the business, or by committing acts *ultra vires,* or by wasting, misusing, or misapplying the property or funds of the corporation.

As that statute is the most recent and pertinent expression of legislative will upon the subject, it is necessarily controlling.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*Lazarus & Luce* for Plaintiffs and Appellants.

*Hornor & Godchaux* (Geo. W. Flynn of Counsel) for Defendants and Appellees.

Argued and submitted March 9, 1899.
Opinion handed down April 3, 1899.
Rehearing Refused May 1, 1899.

The opinion of the court was delivered by

WATKINS, J.   This proceeding is one taken *ex parte* by stockholders of the defendant corporation for. the appointment of a receiver, and the judge declined to make the appointment as proposed, but granted in lieu thereof, an order for the respondents to show cause upon a designated day, why a receiver should not be appointed.

On the day designated, the rule was tried, and on the proof administered *pro* and *con*, the judge *a quo* refused to make the appointment, and the plaintiffs have appealed.

The grounds upon which the plaintiffs demand the appointment of a receiver are as follows, substantially, viz.:

That they are the owners and holders of a majority of the shares of the capital stock of the corporation, as follows, viz.:

Louis Sincer twenty shares.

William Hanna fifteen shares.

E. H. Hatry five shares.

M. Kenny three shares.

Otto Walther, as owner, five shares.

Otto Walther, as pledgee, twenty-three shares.

George O'Connor five shares.

Thomas O'Connor, Jr., two shares.

That they represent fifty-five shares of the capital stock, aggregating one hundred in all, of $100 each, that is to say, $10,000 in all; and that one of the plaintiffs holds in pledge twenty-three shares, in addition, making seventy-eight shares, in all.

That, while Louis Sincer is the president of said corporation, and a member of the board of directors, which is charged with the administration of its affairs, he has been practically excluded therefrom by the action of the defendant, W. D. Alverson, who is the secretary and treasurer—said Alverson having assumed and exercised control and conduct of the business of said company.

That he has so conducted its affairs, in the management aforesaid, as "to have entailed heavy and severe losses upon the corporation, defaulting upon its credit and *impairing its capital stock.*"

That against the protest of petitioners as stockholders, said Alverson has issued obligations in the name of the corporation, and has made use of same for his personal benefit, and applied the proceeds of the discount of same to his own advantage, and to the detriment of the corporation.

That being in possession of the assets of the corporation, he has secreted same, and is making an effort to make way with and remove the same.

That they have made repeated efforts, but in vain, to obtain from said Alverson a statement of the business of the corporation, as well as an accounting of its resources and disbursements, its assets and its liabilities; but this he has refused and declined, assigning as his reason therefor, that petitioners had no right to make a demand of him.

That, if said defendant is allowed to continue to manage and administer the affairs and business of the corporation, it will result in the loss and destruction of its property, and "entail upon petitioners, as stockholders, a *loss of their investments in the capital stock of said company.*" (Our italics.)

The answer of the defendants is, that the company's affairs have been well managed by said Alverson, and that no complaint has been made to him or to the board of directors as to any mismanagement on his part.

That there are no pressing creditors demanding payment of their claims.

That the annual meeting of the stockholders of the corporation is to be held under the charter, on the 6th day of February next, and if the plaintiffs desire to change the management of the corporation, a majority of the stockholders can then do so.

They aver, that if a receiver is appointed, the credit of the corpora-

tion will be destroyed; and if said Alverson is enjoined from manag-
ing the affairs of the corporation, great loss will be entailed, "which
will result in the corporation being unable to pay its creditors." ·

They specially deny "that plaintiffs hold a majority of the shares
of the capital.stock of said corporation; and they aver that a majority
of the holders of the capital stock are well satisfied with the adminis-
tration of its affairs by W. D. Alverson, and are willing that he should
be retained in the management of the corporation."

Taking the foregoing statement of the answer as absolutely true for
the purpose of the argument, it is evident that the plain-
tiffs would obtain no relief from the grievances of which they com-
plain, at the contemplated stockholders' meeting.

It further appears from the statement of the assets and liabilities of
the corporation which is appended to the transcript, that it is in-
solvent.

The showing made is as follows, viz.:

By invoice of stock in hand.............................$4,049 00
Open accounts due to the corporation.................... 1,498 93
Cash on hand ........................................  225 09
                                                      _____
    Total ...............  ...............  ........  ....$5,773 02

To bills payable, etc............... ....................$2,848 24
                                                      _____
    Balance credit .......... ...... ........ .........$2,924 78

But this showing does not take into account the capital stock of
$10,000.00; and if a settlement were effected on that basis—accepting
all of the open account as equivalent to cash—and a loss of $7070.22 to
the stockholders in the aggregate, must result; or, in other words, the
stockholders would realize about twenty-five per cent. on the dollar of
their investment.

As further illustrating the situation of affairs, W. D. Alverson
places himself upon the aforesaid statement as a creditor of the cor-
poration for $1,189, balance due him on salary.

Not only so, but he enters upon said statement the following list of
the shareholders of the corporation, viz.:

W. D. Alverson, shares 53.

F. J. Matthews, shares 2.

E. E. Hatry, shares 5.

W. J. Kane, shares 2.

O. Walthers, shares 5.

M. Kenney, shares 3.

Geo. W. O'Connor, shares 5.

L. Sincer, shares 20.

Mrs. K. Alverson, shares 5.

On this representation of W. D. Alverson's holding of stock, it is quite apparent why he should be well satisfied with the administration of the affairs of the corporation, the whole of which was under his control.

By comparing the two statements with respect to the shareholders, it will be observed that the only holdings of the plaintiffs which the defendants dispute are those of William Hanna, fifteen shares, and Thomas O'Connor, Jr., two shares; and it further appears that all the stockholders enumerated on the defendant's list are plaintiffs in this suit, except four, viz.:

W. D. Alverson, F. J. Matthews, W. J. Kane and Mrs. K. Alverson.

W. D. Alverson as a witness, gave to the court the following information as to the fifteen shares of stock of Wm. Hanna, which were omitted from his (witness') list, viz.:

"Q. How many shares has Mr. William Hanna?

"A. None.

"Q. Did you not sell William Hanna fifteen shares of this stock, and then transfer them to him; and didn't he, subsequently, deliver them to you for the purpose of having the transfer recorded?

"A. I sold him thirty shares.

"Q. You sold him thirty shares?

"A. Yes; thirty shares.

"Q. Did you deliver the certificates to him?

"A. No, sir.

"Q. In whose possession are those certificates?

"A. Mine, sir.

"Q. How many of them belonged to him?

"A. He has paid on account of that stock—

"Q. How much has he paid on account?

"A. He has paid $1000.00.

"Q. Did you deliver fifteen shares to him and endorse on the reverse of it your delivery of stock to Mr. Hanna, stock in the W. D. Alverson Company, Limited?

"A.  I did, sir.

"Q.  Have you that stock?

"A.  Yes, sir.

"Q.  Is it in your possession?

"A.  Yes, sir; it is at the office of the company.

"Q.  It was turned over to you for the purpose of making a transfer on the books of the company, was it not?

"A.  No, sir; it was returned to me as security until he paid the balance due on it.

"Q.  How much did you sell it for?

"A.  Seventy-five cents on the dollar.

"Q.  Fifteen shares was (worth) $1000.00?

"A.  No, sir; $1125.00."

But, this witness had just answered that he had already paid him $1000.00; and, consequently, there remained due only $125.00, for which he held the whole amount as security.

The following is the further evidence of said witness, viz.:

"Q.  Leaving Mr. Hanna's fifteen shares out, how many shares would you have?

"A.  Well, the difference between fifteen and sixty.

"Q.  Then, you would have forty-five shares?

"A.  Yes, sir.

*                    *                    *                    *                    *

"Q.  Mr. Louis Sincer has twenty shares?

"A.  Yes, sir.

"Q.  Mr. William Hanna has fifteen shares, if they are his?

"A.  Yes, sir.

"Q.  Mr. E. E. Hatry has five shares?

"A.  Yes, sir.

"Q.  And Mr. Maurice Kenney has three shares?

"A.  Yes, sir.

"Q.  And Mr. Otto Walther has five shares?

"A.  Yes, sir.

"Q.  And Mr. George O'Connor has five shares?

"A.  Yes, sir.

"Q.  And Mr. Thomas O'Connor has two shares?

"A.  Yes, sir.

"Q.  And Mr. Matthews two shares?

"A.  Yes, sir.

"Q. That makes fifty-seven shares of stock?

"A. Yes; if there is no mistake in calculation.

"Q. Then, you would not have forty-five shares of stock, if Mr. Hanna's stock was his stock; you would only have forty-three?

"A. Yes, sir; that is correct, as you counted it."

The result of that investigation is, that the defendant, W. D. Alverson, as a witness, testified that the list of stock-holders as given in the plaintiffs' petition is absolutely correct, and that they are the owners of fifty-five shares of stock—a clear majority of five, not counting the twenty-three shares which are claimed by Otto Walther, as being in pledge to him.

That being his sworn testimony, the further result is, that the representation made in his statement of assets and liabilities of the corporation, and as to its shareholders, is incorrect.

Instead of his having fifty-three shares as stated, he had that number, less the fifteen shares of William Hanna he had erroneously claimed; and, after deducting them, he had only thirty-eight.

The following interrogation of that witness shows, in a very clear light, the absolute control W. D. Alverson had of the affairs of the corporation, and the great difficulty there was in removing him from the management of the corporation.

"Q. And that was brought to the attention of the stockholders and officers of the corporation, was it?

"A. It was very seldom that we got the board of directors together.

"Q. Wasn't the reason of that, because you had assumed exclusive control and management of the business, and was indifferent to their wishes or request?

"A. No, sir.

"Q. That is not so?

"A. That is not so, sir!

"Q. When was the last statement that you rendered an accounting to stockholders of the company?

"A. On the 11th of January.

"Q. On the 11th of January, this year?

"A. Yes, sir, 1899.

"Q. Who was present?

"A. Myself and Mr. Sincer, the president.

"Q. Was anybody else present?

"A. No, sir.

"Q.  Who else was on the board of directors?

"A.  Mr. Matthews.

"Q.  Hasn't he resigned from the board?

"A.  His resignation was not accepted.

"Q.  Who didn't accept the resignation?

"A.  The board of directors.

"Q.  Who is the board of directors?

"A.  Myself, Mr. Sincer and Mr. Matthews.

"Q.  Mr. Matthews resigned, and you refused to accept his resignation?

"A.  He sent in his resignation, resigning as an officer of the board, but there was no *quorum* to act on his resignation.

"Q.  How many shares has Mr. Matthews?

"A.  He owns two shares.

"Q.  Two shares?

"A.  Yes, sir.

Now, conceding W. D. Alverson to be the owner of forty-three shares, and Matthews two—forty-five for the two—and Lewis Sincer only twenty shares, the acceptance of the resignation of Matthews depended entirely on the pleasure of Alverson; and as there were but three members in the board, and Matthews not acting, a dead-lock was brought about, and gave Alverson absolute control of the corporation.

And, as matters stood when this suit was filed, and upon the showing made upon the books of the company accrediting Alverson with fifty-three shares of the stock, he would have held as complete control over a meeting of stockholders, as he had over the company's board of directors.

There is another subject of discussion which is deserving of mention, and to which we will make reference by quoting the testimony, viz.:

"Q.  Did you execute to Mr. Otto Walther three notes for $100 each in the name of. W. D. Alverson Company, Limited, and give him your stock as collateral security, and use the proceeds realized from those notes for your own personal benefit and advantage?

"A.  I pledged to Mr. Walther three or four notes in connection with the stock certificates as collateral *on a personal loan.*   (Our italics.)

"Q.  Whose notes did you execute in order to obtain the loan?

"A. The notes were executed by the W. D. Alverson Company, Limited, to W. D. Alverson.

"Q. You executed notes of the corporation to your own order?

"A. No, sir; the corporation executed them.

"Q. Who executed and authorized the execution of those notes?

"A. The board of directors.

"Q. How was that done?

"A. That was done under a resolution of the board of directors.

"Q. Who participated in that proceeding?

"A. The president, Mr. Louis Sincer, and Mr. F. J. Matthews.

"Q. Have you those notes in your possession?

"A. Yes, sir.

"Q. Will you produce them.

"A. No, sir, I can't now; but they are at the office of the company.

"Q. You took them up this morning?

"A. Yes; I took them up this morning.

"Q. Would you recognize a copy of those notes if you were shown them?

"Q. Look here; (witness shown a document).

"A. This is correct, sir.

"Q. Did the president of the company sign those notes?

"A. No, sir.

(The notes were then offered in evidence).

"Q. These are the four notes which you executed in the name of the W. D. Alverson Company, Limited?

"A. The W. D. Alverson Company did it.

"Q. *Who drew the notes?*

"A. *The secretary and treasurer per resolution of the board of directors.*

"Q. That is *you?*

"A. *Yes, sir.* (Our italics).

"Q. You say that Mr. Louis Sincer, the president, voted for that resolution?

"A. Yes, sir.

"Q. Are you positive of that?

"A. Yes, sir.

"Q. Well, if he voted for the resolution, why is it that he didn't sign the note?

"A. There was a resolution passed by the board of directors, em-

powering the secretary and treasurer to sign checks and notes, *only for the benefit of the company.*

"Q.   That resolution was passed? `

"A.   Yes, sir.

"Q.   Didn't you call upon Mr. Sincer, your president, within the past thirty days and request him to sign a note of $500, and didn't he decline to sign it?

"A.   Yes, sir.

"Q.   Why, then, if the resolution existed, did you call on Mr. Sincer, the president, to sign the note?

"A.   I gave the note to Mr. Walther, and Mr. Walther said that he took the note, and they refused to discount the note unless the president would put his name on it as an endorser, etc."

From the foregoing, it is quite evident, that the defendant did, as secretary and treasurer of the corporation, execute notes in the name of the corporation and pledge the same, with his certificate of stock attached as collateral, to Otto Walther, one of the plaintiffs in this suit, and used the proceeds for a *personal loan to him.*

That he drew those notes as secretary and treasurer of the company, without having procured the signature of the president; and, notwithstanding he declined to sign same upon application made to him; and that the resolution of the board of directors, on the authority of which he claimed to have acted, only authorized the issuance of notes *"for the benefit of the company,"* as he states in his testimony.

It is further noticeable, that, notwithstanding W. D. Alverson, as a witness, admits that he had taken up those notes *on the day on which he testified,* they find no place in the statement of assets and liabilities of the corporation, which he produced in court, and which is annexed to the transcript and brought up in the original.

Considering the fact that the stock of the company, on the defendant's own showing, is not worth more than twenty-five cents on the dollar; that the management of the company's affairs by the defendant, as secretary and treasurer, has been unsatisfactory and injurious, and that he has confessedly disposed of shares of its stock at seventy-five cents on the dollar; that the board of directors is practically composed of two directors—the third having tendered his resignation—and those two unable to agree upon any proposition; that the defendant, W. D. Alverson, having obtained possession  as secretary and treasurer  of fifteen shares of the capital stock of the corporation in

trust for another, employed and used same as his own, with the apparent purpose of having it appear, as it is alleged in his answer, that he was the holder of the majority of stock, and exercised same to the detriment of the corporation—we are of opinion that plaintiffs, as stockholders, have made out a case entitling them to have a receiver appointed for the purpose of taking charge of its assets and affairs, and winding up the business of the corporation according to law.

The law seems to contemplate just such a case, as this record discloses.

That the "Civil District Court of the parish of Orleans (is) em-
" powered to appoint receivers to take charge of the property and busi-
" ness of corporations        *        *        *        *        *
" at the instance of any stockholder or creditor when the directors, or
" other officers of the corporation are jeopardizing the rights of stock-
" holders  or creditors  by grossly mismanaging the business, or by
" committing acts *ultra vires,* or by wasting, misusing, or mis-applying
" the property or funds of the corporation."

Section 1, paragraph 2 of Act 159 of 1898.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that a receiver be appointed to take charge of all the property, rights and credits of the W. D. Alverson Company, Limited, with full power and authority under the law to wind up and liquidate its business and affairs, and that W. D. Alverson, individually, be adjudged to pay all costs of both courts.

The CHIEF JUSTICE, absent from the argument, and MR. JUSTICE MONROE, who became a member of the court after its submission, took no part in the decision of this case.