Statement of the Case.
MONROE, C. J.
A minority of the stockholders of Webre-Steib Company, Limited, consisting of seven women and three men, and holding 580, out of 2,100, .shares of the stock of the company, of the par value of $25 each, prosecute an appeal in this case from a judgment denying their application for the appointment of a-receiver.
They allege, in substance, that the majority of the stockholders, by grossly mismanaging the business of the company, through the officers elected by them, and by the ultra vires acts of such officers, are violating and jeopardizing their rights and putting their interests in imminent danger; that petitioners have been refused a statement of the business and financial condition of the company and permission to examine the books; that no proper books have been kept, but that the affairs of the company have been permitted to become confused with those of Joseph-Webre Company, Limited, an insolvent corporation, now in the hands of a receiver, and against which proceedings in bankruptcy have been instituted; that Joseph-Webre Company, Limited, is indebted to Webre-Steib Company, Limited, and that, against good morals and good practice, the same directors are in control upon the boards of both companies, the president of Webre-Steib Company, Limited, is receiver of Joseph-Webre Company, Limited, and counsel holding large claims for themselves and others, adverse to the interests of Webre-Steib Company, Limited, are representing said adverse interests, both corporations and the receiver ; that petitioners are informed and believe that said directors and officers are endeavoring to cause certain liabilities of the bankrupt Joseph-Webre Company, Limited, to be assumed and paid by Webre-Steib Company, Limited; that petitioners are informed and believe that they are contemplating the imposition of an additional mortgage upon, or the pledging of the crop of, Golden Ridge Plantation, the sole asset of Webre-Steib Company, Limited, with a view of purchasing the assets of Joseph-Webre Company, Limited, in the interest of said directors and officers, and to the prejudice of the stockholders of Webre-Steib Company, Limited, other than themselves; that said majority stockholders, also directors and officers of said insolvent corporation, propose to re-elect the same directors and officers and retain them in control of the offices of Webre-Steib Company, Limited; and that the appointment of a receiver is necessary to protect the rights and interests of the minority.
Opinion.
[1] It appears from the evidence that, upon January 22d and 23d of this year, counsel representing the petitioners wrote to the president of the defendant company informing him of their employment, requesting that a statement of the assets and liabilities of the company and of its income and disbursements be furnished, and that they be permitted to examine the books of the company, through a certified public accountant. It is not shown that the president replied to the letter, so written, but it appears that he called on the writer and inquired as to the kind of statement that he wanted, promised to furnish it, and directed the secretary to *275 prepare such a statement, and that the statement was prepared and submitted to him, after which he directed the secretary to send it to the counsel representing the company, to be delivered to the counsel by whom the demand had been made. It seems, however, that there appeared upon the statement, as a liability of the company, a certain note for $20,000, which had been issued, in the name of the company, by its former president, and countersigned by the secretary, without authority or consideration; and, when the case was on trial, some two months later, and the statement was finally produced, the then (and now) president testified that, though he had instructed the counsel of the company to deliver it to plaintiff’s counsel (without explanation, so far as the record discloses, and as containing correct information), he had not signed it, because he did not believe that the company was bound for the payment of the note to which we have referred. The counsel to whom the statement was delivered had not previously delivered it to plaintiff’s counsel, and explains the omission by saying:
“I was to send that statement to Mr. McGivney and always forgot to bring it to him. I went to the city once with the intention of bringing it to him, and I forgot it on my desk.”
Counsel seems also to have forgotten that the statement might have been delivered through the mail, within an hour or two, and the result was that plaintiff’s counsel were obliged to prepare their petition with but little definite information and never saw the statement or the books of the company until they were produced on the trial. In the meanwhile, and before the suit was instituted, Louis Brazan, one of the plaintiffs herein, who is said to be a hard-working farmer with little business experience, and who himself, owning but six shares of the stock of the company, represents most of the minority stockholders, received a note from the counsel to whom we have referred, reading: “Come at once to Joe Webre’s store, I want to see you on business.” And he went to the place appointed and gives the following account of his experience, to wit:
“They called me about three or four weeks ago; there were three or four members of the board of directors there [meaning of Webre-Steib Company Limited], Theo. Donaldson, Roger Steib, Theo. Gravois, and Stanislaus Sevin, and they asked me if we wanted to buy JosephWebre Company and make one corporation with Joseph-Webre Company and Webre-Steib Company, and I said: T can’t give you no answer. I’ll have to see my lawyer.’ * * * Mr. I-Iimel [counsel by whom he had been summoned to the meeting] told us the Webre-Steib Company owes Joe-Webre Company $20,000, and, ‘if you want, we are going- to make one corporation with both places,’ and I told him T will have to see my lawyer,’ and in the same evening, Mr. Himel came to my house and said, ‘Never sign such a proposition,’ because that note was no good. Q. Had you ever heard of that $20,000 being due before? A. No, sir.”
Of the parties thus named by the witness, Theodore Gravois. was, and is, and has been from the beginning, a member of the board of directors of the defendant company, its field manager for 10 years prior to March, 1913, and, since then, its president, and he was also at that time receiver of the Joseph-Webre Company, Limited; Roger Steib was, and had been for years, a member of the board of directors, and secretary-treasurer of the defendant company, and, in the latter capacity, had signed the $20,000 note to which we have referred, and he had also been a member of the board of directors of the Joseph-Webre Company, Limited; and Theodore Donaldson had been for several years, up to 1914, a member of the board of directors of the defendant company and the bookkeeper (and probably, also, director) of the Joseph-Webre Company, Limited, by whom the accounts of the Webre-Steib Company, Limited, and the Joseph-Webre Company, Limited, until just prior to the appointment of the receiver for the company last named, had been kept in the same books, and who when, in January, 1914, separate books were opened for Webre-Steib Company, Limited, gave Information leading *277 to the entry of the' $20,000 note as a liability (although he testifies that he knew that it had been issued without consideration), and to another false entry, to the effect that the note was secured by a second mortgage, which he knew to be nonexistent and which would have been worthless if it had existed.
Besides the note for $20,000, which, according to the entry above mentioned, was “given to the Bank of Donaldsonville to be discounted by them for account of L. S. Webre,” there had been issued, under the administration of the same parties, controlling the directorates of the two companies, in the name of Webre-Steib Company, Limited, and for the accommodation of Joseph-Webre Company, Limited, two notes, of $15,000 and $5,000, respectively, and the $15,000 note had been paid from the proceeds of the sugar crop made by Webre-Steib Company, Limited, in 1913, whilst the $5,000 note is still held by one of the banks as an obligation of that company.
Mr. St. Paul, an expert accountant called by plaintiffs, testified that, assuming the $20,000 note to represent a liability, he found that the capital of the defendant company has been impaired to an extent exceeding 50 per cent.; that Joseph-Webre Company, Limited, is indebted to defendant in the sum of $7,248.26; that the present directors of the defendant company are indebted to JosephWebre Company, Limited, in amounts aggregating $21,775.15, or more than one-third of the capital of that company; that the same parties allowed Louis Webre to get over $200,000 from that company upon inadequate security, .causing an apparent loss to the company of $47,998.38; and that the company has been forced into bankruptcy.
The evidence sustains the assertion that Mr. Gravois is a competent field manager; that is to say, witnesses have testified, without contradiction, that Golden Kidge Plantation has been well cultivated and cared for under his administration. In the 13 years, from 1902 to 1914, inclusive, there were 7 years during which no dividends were declared; such profits as may have been earned having been invested in improvements. During the other six years there were dividends aggregating $28.20 per share (of $25), so that the average dividend during the 13 years was, say, $2.17 per share, or 8.68 per cent., which, in view of the loss of $6,600, by the failure of a bank, and a debt of $8,000, incurred by reason of overflow, may probably be considered a fair return. But Mr. Gravois himself disclaims knowledge and experience in financial management, and he participated in the action of the board of directors which authorized the accommodation and unsecured loans, of $15,000 and $5,000, to Joseph-Webre Company, Limited, made no effective objection to the entry upon the books of the company, as a liability, of the $20,000 note, subsequently issued, without authority or consideration, for the benefit of Louis S. Webre, and participated in the meeting at which Brazan, a plain, inexperienced farmer*, who was endeavoring to represent some of the feminine stockholders, was informed that the company owed the $20,000, although Brazan was the only person present who did not know to the contrary, which misinformation was not given for any good purpose that we are able to discover.
[2] Our statute (Act No. 159 of 1898, § 1) declares that the district courts may appoint receivers to take charge of the property and business of corporations:
.i * ,14 4S 2. At the instance of any stockholder or creditor, when the directors or other officers of the corporation are jeopardizing the rights of the stockholders or creditors by grossly mismanaging the business or by committing acts ultra vires, or by wasting, misusing, or misapplying the property or funds of the corporation. * * ~
“11. At the instance of any stockholder when a majority of the stockholders are violating the charter rights of the minority and putting their interests in imminent danger.”
*279 Counsel for defendant objected to the introduction of evidence, on the ground that plaintiffs had not alleged fraud, but, as may be seen, no such allegation is required. It is immaterial, therefore, for the purposes of the question here presented, whether the gross mismanagement, ultra vires acts, wasting, misusing, or misapplying of funds, or violation of charter rights specified in the statute are done purposely and fraudulently, or negligently and inefficiently; the result is the same — the innocent stockholder, or creditor, is the sufferer- — and the intent of the law is to protect him from inefficiency and negligence, as well as from fraudulent machination. The evidence in this case discloses several, if not all, of the conditions contemplated by the statute, not in that department to which Mr. Gravois devoted his particular attention and in which he is shown to be efficient, but in the handling of the finances, to which he does not appear to have attended, and in which there appears to have been, charitably speaking, marked inefficiency.
The complaining stockholders are therefore entitled to the relief prayed for. Sincer et al. v. Alverson et al., 51 La. Ann. 955, 25 South. 650; Davies et al. v. Waterworks & Light Co., 107 La. 145, 31 South. 694; Varnado et al. v. Banner Cotton Oil Co. et al., 126 La. 590, 52 South. 777; Van Vleet v. Evangeline Oil Co., 127 La. 919, 54 South. 286; Id., 129 La. 406, 56 South. 343; Brock v. Automobile Livery & Sales Co., 130 La. 404, 58 South. 21; Kerlin v. Bryceland Lumber Co., 134 La. 463, 64 South. 289; Bank v. Bailey, 29 Okl. 246, 116 Pac. 812, 39 L. R. A. (N. S.) 1033, and note.
For the reasons thus assigned, it is ordered that the judgment appealed from be set aside, and that this case be remanded, with instructions to the district court to appoint the receiver as prayed for, and otherwise to proceed according to law, the cost of this suit to be paid by the receivership.