770 So.2d 798 (2000)
In re DELANO PLANTATION, INC., et al.
v.
June Amy LOWERY, et al.
No. 99-1752.
Court of Appeal of Louisiana, Third Circuit.
June 7, 2000.
Rehearing Denied August 2, 2000.
Writ Denied November 13, 2000.
*799 Leslie J. Schiff, Schiff Law Corporation, Opelousas, LA, Counsel for Plaintiffs/Appellees.
G. Frederick Seemann, Fernandez & Seemann, Lafayette, LA, Otis E. Lomenick, Jr., Lomenick & Ashley, Opelousas, LA, Counsel for Defendants/Appellants.
(Court composed of OSWALD A. DECUIR, MICHAEL G. SULLIVAN, and GLENN B. GREMILLION, Judges.)
SULLIVAN, Judge.
Defendants, majority stockholders in Delano Plantation, Inc. (Delano), appeal the trial court's appointment of a permanent receiver to take control of the corporation's property and affairs. We affirm.

Facts[1]
Delano was incorporated by Bessie Nicholson Clopton. Prior to her death, Ms. Clopton donated stock in the corporation to her nephew, James Nicholson Lowrey, and his son, James Bettison Lowrey. At her death, Ms. Clopton's shares of corporate stock were inherited by James Bettison Lowrey. Upon the death of James Nicholson Lowrey, his estate was inherited by his wife, Clementine Guilbeaux Lowrey (one-half with a usufruct over the other one-half) and his children James Bettison Lowrey and Ann Lowrey Robinson (one-half subject to the usufruct in favor of their mother). James Bettison Lowrey died in 1979, leaving his estate to his children, Brandon, Alice, and Lainnie Lowrey. Currently, stock in Delano is owned by Brandon, Alice, and Lainnie Lowrey, Ann Lowrey Robinson, and the succession of Clementine Lowrey.
At its inception, Delano was a farming operation. After the deaths of James Nicholson and James Bettison Lowrey, June Lowrey, widow of James Bettison Lowrey, served as president of Delano and was in control of corporate operations until 1987. Delano's Board of Directors consisted of Brandon, Alice, and Lainnie Lowrey and Clementine Lowrey. During the 1980's, Delano began receiving oil and gas revenues. In 1988, the corporation's farming operations ceased. Delano continues to receive oil and gas revenues. It also receives rental revenues from leases on portions of its property for farming and hunting. Revenue is also occasionally generated by the sale of timber.
A derivative action, alleging mismanagement of Delano by its corporate officers, was filed by Clementine Lowrey and Ann Lowrey Robinson. Thereafter, suit was filed for the appointment of a receiver, and a temporary receiver was appointed. Following a hearing on March 17, 1998, the trial court appointed a permanent receiver. Defendants, June, Brandon, Lainnie and Alice Lowrey appeal. They assign three errors by the trial court: 1) finding that the corporation is in need of a receiver, 2) finding that salaries paid to officers were not proper when there is no proof in the record, and 3) appointing a receiver based upon past practices of the corporate officers.

Standard of Review
The appointment of a receiver is subject to sound judicial discretion. La-Fleur v. Guilbeau, 617 So.2d 1362 (La. App. 3 Cir.1993). The decision to appoint a receiver is influenced by the trial court's consideration of whether it would serve a *800 "useful purpose." Id. at 1366. The trial court must determine whether the facts justify the appointment of a receiver.
A trial court's findings of fact may not be reversed absent manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993). Evaluations of credibility and reasonable inferences of fact should not be disturbed on review. When reviewing the trial court's findings of fact, the appellate court must review the entire record to determine whether the trial court's conclusion was a reasonable one. Id. If the trial court's findings are "reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 882-83, quoting Housley v. Cerise, 579 So.2d 973, 976 (La.1991).

Discussion
In written reasons, the trial court outlined its impression of this matter and detailed the facts which, in its view, necessitated the appointment of a receiver. We have reviewed the record and the applicable law and find the trial court's written reasons to be an accurate application of the law to the facts, and we adopt them as our own:
The matter before the Court involves a petition by minority shareholders of Delano Plantation, namely, Clementine Lowrey and Anne Lowrey Robinson. The defendants are in effect the majority shareholders who are directors and officers of the Corporation. The petition requested that a temporary receiver be appointed (which has been accomplished) and the matter before the Court at this time involves the issue as to whether or not a permanent receiver should be ordered. This request by the petitioner brings into consideration the following provisions of Louisiana Revised Statute 12:151, which provides in part as follows:
THE LAW
"The Court may, after trial, appoint a receiver to take charge of the corporation's property when it is made to appear, in a proceeding instituted against the corporation:
(1) By any shareholder or creditor, that the directors or officers of the corporation are jeopardizing the rights of its shareholders or creditors by grossly mismanaging the business, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation ..."
In applying the above to the facts of the case at bar, there is a readily obvious disagreement between the parties as to just exactly what the requirements are before the Court can order the appointment of a permanent receiver. Counsel for the defendants obviously denies that there are any grounds whatsoever for the appointment of a receiver, but in addition he suggests to the Court that a receiver is not to be appointed absent a finding of "wreck and ruin". Counsel for the plaintiffs suggests that the facts are sufficient to warrant the appointment of a receiver and argues that it is not necessary for the evidence to establish "wreck and ruin" but that rather it is sufficient if the actions of the officers and directors are equal to gross mismanagement by way of a wasting, misuse or misapplication of the Corporate assets. The Court has reviewed the jurisprudence relied upon in the briefs filed by all parties, and concludes that in the light of the present provisions of Title 12 of the Louisiana Revised Statutes, it is not necessary to prove wreck and ruin. In the opinion of the Court it is clear that the legislature felt that it was imperative to offer protection to shareholders from the actions of the directors and officers when those actions resulted in either gross mismanagement or gross and persistent "wasting, misusing, or misapplying the assets *801 of the corporation ...". In reaching this conclusion, the Court is guided not only by the results reached by the jurisprudence, but also the language and intent thereof. See LaFleur v. Guilbeau, 617 So.2d 1362, (La.App. 3 Cir.1993), and West v. Certified Credit Corp., 162 So.2d 589 [ (La.App. 2 Cir.1964), writ denied, 246 La. 575, 165 So.2d 479 (1964) ].
The above having been noted, the only question left remaining is one as to whether or not the evidence supports a finding that would require an appointment of a permanent receiver.
FACTS
This Court has received evidence relating to the actions of the officers and directors going back to the 1970's coming forward to approximately the early 1990's when the initial suit was filed. That evidence reflects, in this Court's opinion, more than ample proof of the wasting, misusing and misapplication of Corporate assets, which in turn equals gross mismanagement of the business. Prior to going into the details of the Court's finding, it is imperative that it be noted that the Court is not of the opinion that anyone was trying to steal or defraud shareholders. Rather, the Court is of the opinion that the operation of this Corporation was similar to that which is seen in numerous small family businesses where all owners receive benefits equally from transactions which might would ordinarily be inappropriate if there were other shareholders (such is the case here) who were not receiving their fair share of the "benefits". By way of example, the Court could refer to the hypothetical where a husband and wife own a business, which is incorporated and where they are the only two shareholders, and where their children may contribute a few hours a week of service to the corporation doing menial jobs for which the children are "rewarded generously" with a substantial paycheck. Certainly, as between the husband [and] wife shareholders, there is "no harm done" and there is no one to question the activities. (Except perhaps the I.R.S.) However, if on the other hand there was another shareholder, say the husband's brother, and that shareholder's children were not treated equally, then, the brother would certainly have cause to complain about the generous pay to his nieces and nephews.
In the case at bar, the Court could point to the expenditure of Corporate funds/assets which served absolutely no business purpose ranging anywhere from the cost of mounting a trophy fish to the donation to sororities. There are many, many, many other consistent things that have taken place over the years with this Corporation's funds, similar to such transactions. However, the Court is satisfied that the most grievous inappropriate act of the officers and directors relates to the payment of salaries. In short and in summary, the record will reflect that from 1979 to January of 1988, the following officers' salaries were paid:

June Lowery ....... $223,807.00
Brandon Lowrey .... $239,821.00
Lainnie Lowrey .... $112,038.00
Alice Lowrey ...... $ 88,539.00

Perhaps standing alone these numbers might not be of any consequence, however, considering the duties performed by these individuals, and/or lack of duties, and particularly considering the ages of Brandon, Lainnie, and Alice, while they were drawing substantial salaries, the Court cannot help but have serious questions as to the legitimacy thereof. The various exhibits, etc., indicate that in 1979, Brandon was seventeen years of age, Lainnie was sixteen years of age, and Alice was thirteen years of age. This would mean that in 1980, when Brandon was eighteen years of age, he earned approximately $7,500.00; in 1981, when he was approximately nineteen years of age, he earned $28,000.00; and *802 1982, when he was twenty years of age, he earned approximately $28,000.00; in 1983, when he was twenty-one years of age, he earned approximately $35,000.00, etc. Likewise, this would mean that when Lainnie was eighteen years of age, she earned $6,000.00; when she was nineteen years of age, she earned approximately $15,000.00; when she was twenty years of age, she earned approximately $13,000.00; and when she was twenty-one years of age, she earned approximately $12,000.00 for her efforts with the Corporation. As to Alice, when she was fifteen years of age, she earned $1,000.00; when she was sixteen years of age, she earned approximately $8,000.00; when she was seventeen years of age, she earned approximately $7,600.00; when she was eighteen years of age, she earned approximately $7,000.00; when she was nineteen, she earned approximately $12,000.00; when she was twenty years of age, she earned approximately $13,000.00; and when she was twenty-one years of age, she earned approximately $37,000.00.
As to June Lowrey, there would seem to be nothing unusual as to her earnings as would relate to her age, since she was a mature woman of thirty-nine in 1979. However, there is serious evidence to suggest that she was employed pretty much full-time at Limited Edition as a sales clerk during the years that she was earning substantial salaries for her work with the Corporation. It also appears that her salary was not reduced in 1985, when she spent the summer in Europe, and her salary increased slightly from $30,000.00 to approximately $31,000.00 in 1986, when she resided substantially in her apartment in New Orleans.
As to the children, Lainnie and Alice, the Court also has problems understanding how they could earn those kinds of salaries while they were full-time students at either Belmont Academy (High School) and/or away at college at LSU. The Court could go on and on with the comparison of officer/director salaries comparing them to such things as the salary of regular corporate labor, however, suffice it to say that the abuse can be summed up by reviewing how well the Corporation did during the peak years, which the Court has discussed, running from approximately 1981 through approximately 1987. In 1981, June, Brandon, Lainnie, and Alice received salaries totaling approximately $52,000.00, while the Corporation showed a net loss from farming of approximately $509,000.00. In 1982, while the Corporation was losing approximately $546,000.00 from the farming operation, the Lowreys received approximately $83,000.00 in salaries. In 1983, while the Corporation's farming operation was losing approximately $407,000.00, the Lowreys drew salaries of approximately $88,000.00. In 1984, the Corporation's net loss from farming was approximately $251,000.00, and the Lowreys were paid approximately $85,000.00 in salaries. In 1985, the net loss for the Corporation from farming was approximately $531,000.00, and during that year the Lowreys received approximately $93,000.00 in salaries. In 1986, the Corporation loss (sic) approximately $314,000.00 from the farming operation, and during that year the Lowreys were paid a salary of approximately $97,000.00. In 1987, the farming loss was down to approximately $268,000.00, and the Lowrey's salaries were up to approximately $118,000.00. These numbers give the Court serious cause to reflect on what was going on. Either this Corporation was being operated akin to the United States Government or something was happening that has not been explained to the satisfaction of this Court. The affairs of the Corporation, during this time frame, would have probably best been handled by not having been handledin other words, perhaps there should have been no operation whatsoever. Obviously, this is a choice that could have been made by the officers and directors and yet it was *803 not. Simply stated, sometimes "ceasing to do business" is a reasonable business alternative.
CONCLUSIONS
This Court is from the old school in that it is extremely reluctant to get involved in family affairs and the affairs of a family business. The Court is aware of the defendants' argument that if there were abuses, those abuses have been eliminated. Unfortunately, as the saying goes "it is too little too late". It is the opinion of this Court that a permanent receiver must be mandated. The Court is extremely reluctant to order same, however, the Court has serious concern as to the financial welfare of the Corporation should these abuses continue unabated absent a receiver.
The above in mind, the Court grants petitioner's request for the appointment of a permanent receiver.
Defendants urge this court to reverse the appointment of the receiver because Delano is solvent and there is no evidence that they intended to wreck or ruin the corporation. There is no merit to this argument. In the case of Receivership of Webre-Steib Co., 136 La. 272, 67 So. 1 (1914), the court rejected the contention that it is necessary for a plaintiff to allege fraud in a suit to appoint a receiver. In doing so, the court explained the intent of the law on receivership:
It is immaterial, therefore, for the purposes of the question here presented, whether the gross mismanagement, ultra vires acts, wasting, misusing, or misapplying of funds, or violation of charter rights specified in the statute are done purposely and fraudulently, or negligently and inefficiently; the result is the same-the innocent stockholder, or creditor, is the sufferer-and the intent of the law is to protect him from inefficiency and negligence, as well as from fraudulent machination.
Id. at 2, 136 La. at 279, 67 So. 1. The current provisions of La.R.S. 12:151(A)(1) are almost identical to the statute at issue in Webre-Steib.
Defendants argue that the trial court's appointment of a receiver was error because there was no evidence that the salaries paid to the Lowreys were not proper. However, the evidence does prove that June Lowrey's salary exceeded that of a starting accountant, while her education was not shown to be that required of an accountant and her description of the duties she performed for the corporation was not comparable to the duties an accountant would perform. Furthermore, the trial court determined that she could not have been spending as much of her time performing duties for Delano as she claimed, due to her employment at a dress shop and because of trips to Europe and New Orleans. With regard to the children, we find no error with the trial court's analysis and determination that their salaries were unreasonable considering their ages and the fact that they were in school most of the time they received salaries. This is especially true with respect to Lainnie and Alice. Additionally, we find June Lowrey's testimony as to the duties performed by the children to be less than credible.
Lastly, Defendants argue that the trial court committed error appointing a receiver because the basis of the appointment was their past practices, rather than their current practices. First, we note that all of Delano's current income is passive income from oil and gas production or rentals. Thus, the appointment of a receiver of Delano will not suspend the functions of the corporation to any degree. Additionally, we observe that without this litigation and the pending derivative action, there is no reason to believe that the abuses, though maybe not as egregious, would not have continued.
Finally, we note the following statement quoted in West, 162 So.2d at 595, quoting 6 THOMPSON ON CORPORATIONS, § 4628 (3d ed.):

*804 It would be a sad commentary on the law if, when the trustee [board of directors] of a corporate estate is making an improper disposition of it, or has shown improper partiality toward one of its conflicting parties, or has put the estate in a fix it is liable and likely to be either wasted or destroyed, or mercilessly taken from all and given to a part, a court could not reach out its arm and preserve and administer the estate.

Conclusion
Finding no error, the judgment of the trial court is affirmed. All costs of this opinion are assessed to Defendants.
AFFIRMED.
NOTES
[1] For purposes of this opinion, we accept as accurate the recitation of background facts provided in Defendants' brief, as they were not disputed by Plaintiffs.