WILLIAM L. MELLON et al.

*v.*

MISSISSIPPI WIRE GLASS COMPANY.

[Submitted September 19th, 1910.    Decided September 30th, 1910.]

1. Documents forming part of a contract must be construed by giving the words used therein their ordinary meaning.

2. Where the stockholders, through the corporation, whose property defendant purchased under an agreement to issue preferred stock in payment therefor to the stockholders of the selling corporation, accepted the certificates of preferred stock tendered to them by defendant without objection thereto or to the form of defendant's charter amendment authorizing the issuance of such preferred stock, they thereby ratified any variance between the terms of the contract by which the corporate property was sold to defendant, and defendant's amended certificate of incorporation and the preferred certificates, issued pursuant thereto.

3. A corporation, of which complainants were stockholders, sold its property to defendant corporation, in part consideration of the issuance to the selling corporation, of a certain amount of preferred stock; the contract providing that such stock should be entitled to dividends at the rate of five per cent. per annum, and that the certificates should provide that no preferential or co-ordinate lien should be created without the consent of the holders of the majority of such preferred stock, and that it should be redeemable on any dividend day at a certain price and accrued dividends.    Defendant amended its certificate of incorporation in order to issue such preferred stock, and the amended certificate provided that the holders of such stock should be entitled to five per cent. dividends before any dividend should be paid on the common stock, and that the remainder of the net earnings should be declared as dividends on the common stock, and, upon dissolution of defendant corporation, the preferred stockholders, should receive from its assets, the par value of the preferred stock, the remainder of the assets to be paid to the common stockholders.    The certificates of preferred stock issued entitled the holders to receive from the net profits, dividends at the rate of five per cent. per annum, cumulative, and payable before any dividends on the common stock were paid, and if in any year such dividends were not paid, the deficiency should be payable before dividends were paid upon the other stock, the remaining net earnings to be available to pay dividends upon the common stock, and that upon dissolution the preferred stockholders should receive from the corporate assets the par value of the shares and unpaid dividends before anything should be paid to the common stockholders.—*Held*, that the contract for the sale of the cor-

porate property to defendant, defendant's amended certificate of incorporation, and the certificates of preferred stock issued, if construed together as a contract, did not require defendant to set aside a certain amount as a sinking fund out of which to pay complainants as preferred stockholders, the par value of their stock upon dissolution.

4. Preferred stock certificates provided that upon liquidation or dissolution of the corporation, the preferred stockholders should be entitled to be paid in full out of the assets of the corporation, the par value of the shares and the unpaid dividends accrued thereon, before anything should be paid to the holders of the common stock.—*Held*, that the corporation would not be compelled, at the suit of the preferred stockholders, to establish a sinking fund out of which to pay the par value of the preferred stock on dissolution of the corporation, on the ground that when the patents expired, in which nearly the whole capital stock of the corporation was invested, there would be no property out of which to pay the par value of the preferred stock; there being no legal obligation upon the corporation to do so in absence of contract.

---

The bill is filed by holders of preferred stock of the defendant company; it prays that it may be compelled by final decree to establish a deficiency fund which shall be available to redeem the preferred stock at par upon the dissolution of the corporation, and that it may be enjoined from declaring any further dividends among its common stockholders, until such fund shall have been provided. The defendant corporation holds a perpetual charter and there is no dissolution pending or contemplated. The complainants and one other person who is now dead were the sole stockholders of a Pennsylvania corporation called the Brownsville Company. On March 27th, 1903, the Brownsville Company entered into a contract with the defendant by which it sold to the defendant all its assets and property of every kind, excepting cash in bank and bills and accounts receivable, in consideration of the payment of $20,000 cash and $80,000 in five annual installments, and of the issue to the Brownsville Company of preferred stock of the defendant of the par value of $400,000 which the contract says

"shall be preferred as to dividends and distribution and entitled to dividends at the rate of five per cent. per annum payable quarterly from April 1st, 1903, said dividends to be cumulative; said stock to be non-voting stock, and the certificates for said stock shall provide that no preferential or co-ordinate lien or claim shall be created without the consent of the holders of a majority of such preferred stock, and such pre-

ferred stock shall be redeemable on any dividend day at $105 and accrued
dividends, such redemption to be made *pro rata* among all the holders
of such preferred stock."

There were further provisions for the purchase by the defend-
ant of certain merchandise and raw materials of the Brownsville
Company, but inasmuch as these were to be paid for in cash on
an appraisement, they cut no figure in this case. The defend-
ant at that time had a capital share of $1,500,000 common stock,
of which $1,200,000 had been issued. In order to provide for
the preferred stock which it was bound to deliver to the Browns-
ville Company, it on April 6th, 1903, amended its charter so as
to provide for the issuing of $400,000 preferred stock; the
amended certificate contains these words:

"The preferred stock shall entitle the holders thereof to receive out
of the net earnings dividends at the rate of but never exceeding five per
centum per annum payable quarterly, cumulative from the first day of
April, 1903, before any dividends shall be set apart or paid on the com-
mon stock; the remainder of said net earnings shall be declared as divi-
dends upon the common stock; upon dissolution the holders of the pre-
ferred stock shall be entitled to receive from the assets of the corpora-
tion the par value thereof; the remainder of said assets shall be paid
to the holders of the common stock."

When the amendment of the certificate was completed, the
Brownsville Company transferred to the defendant the property
which it had agreed to transfer, and the defendant paid to it
the cash and issued to it the preferred stock which had been bar-
gained for. The certificates therefor provided that the holders
of the preferred stock should be entitled to receive when and as
declared from the surplus or net profits of the corporation divi-
dends at the rate of five per centum per annum from April 1st,
1903, quarterly; that such dividends should be cumulative and
should be payable before any dividends on the common stock or
any other stock of the corporation might be paid or set apart,

"so that if in any year dividends amounting to five per centum shall not
have been paid thereon the deficiency shall be made payable before any
dividends shall be paid upon the common or any other stock or set apart
therefor; the remaining net earnings shall be available for the purpose

of dividends upon the common stock; in the event of any liquidation, dissolution or winding up (whether voluntarily or involuntarily) of the corporation, the holders of the preferred stock shall be entitled to be paid in full out of the assets of the corporation, both the par amount of the shares and the unpaid dividends accrued thereon before any amount shall be paid to the holders of the common or other stock."

There is likewise a provision forbidding co-ordinate or preferential liens upon the company's property without the consent in writing of the holders of the majority of the preferred stock issued.

Upon the dissolution of the Brownsville Company, and the division of its assets, the whole issue of the preferred stock of the defendant was divided amongst its shareholders, and in this way the complainants became shareholders in the defendant corporation.

The balance sheet of the defendant as of January 1st, 1909, shows total assets of $2,058,206.88, nearly all represented by patents, good will and the Brownsville purchase, which also represented patents to the extent of $400,000.

The company has been successful and has made large profits, has already paid the dividends on the preferred stock and has likewise paid large dividends on the common stock, in recent years as much as sixteen per centum per annum. The complainants assert that if this course of business continues, at the time of the expiration of the patents, in which nearly the whole capital stock of the company is invested, there will be neither patents nor good will nor property of any particular value left from which the defendant will be able to realize money to pay the par value of the preferred shares upon dissolution, and they claim therefore that the company should be compelled for their protection to establish a deficiency or sinking fund for the protection of the outstanding preferred stock.

*Mr. Sherrerd Depue,* for the complainants.

*Mr. John W. Griggs* and *Mr. Arthur J. Baldwin* (of the New York bar), for the defendants.

HOWELL, V. C.

Counsel will recall the manner in which the foregoing facts were presented. When the final hearing was moved, counsel on both sides desired to take the opinion of the court upon the question of law which appears so prominently on the face of the bill before proceeding to offer proofs. In considering and deciding this question, I have taken as true the undisputed and acknowledged facts set out in the bill. If after reading my conclusions counsel desire to submit proofs, I will fix a day for that purpose.

The case, as now presented, must be adjudged in accordance with the well-settled principles of the Contract law which apply to corporate action. The complainant can succeed only by showing either an express contract or a contract which may be implied from the documents in the case, or an obligation or duty cast upon the defendant by the law, for the protection of what the complainants claim to be their right. A careful examination of the amended certificate of incorporation discloses no express contract on the part of the defendant to provide any such fund as the complainants desire to have established. This the complainants concede, but they say that taking together the Brownsville Company contract, the amended certificate of incorporation, and the stock certificates which were issued to the complainants out of all these writings, arises an implied contract to establish such a fund. The documents must be construed with reference to the common and ordinary meaning of the words. I have sought therein to find facts from which a contract might be implied, but have not succeeded. I must therefore say that there is nothing in the documents in the case which indicates to the slightest degree any purpose on the part of either the complainants or the defendant to establish a deficiency fund for the benefit of the preferred stockholders.

On the other hand, still treating the case as a case of contract, we find that the amended certificate of incorporation expressly provides for a situation quite at variance with that sought to be established by the complainants; it provides for the preferential dividends "before any dividends shall be set apart or paid on the common stock. The remainder of said net earnings shall be de-

clared as dividends upon the common stock." The same general idea is expressed in the stock certificates which the complainants hold; there the phrase is "the remaining net earnings shall be available for the purpose of dividends upon the common stock." If these words mean anything it is that the preferred stockholders bargained for a stated dividend and consented that all the remaining net earnings or profits might be divided among the common stockholders.

But it is said on the part of the complainants that the amended certificate and the certificates of stock do not coincide entirely with what the defendant agreed to give to the Brownsville Company by the contract. This may be true; there are verbal variations which may or may not be important. But this is not a case for the reformation of the contract or for the correction of any errors or mistakes which may have crept into the transaction between the two companies. The Brownsville Company, and through it the complainants, accepted the certificates of stock tendered to them by the defendant in the form in which they are without objection thereto and without objection to the form of the charter amendment which authorized the issue, and to this extent they ratified any variation that may exist between the terms of the Brownsville Company contract on the one hand and the amended certificate of incorporation and the stock certificates on the other hand.

It is obvious that the Brownsville Company and the complainants might have protected themselves by their contract, but no mention of a deficiency fund or sinking fund appears in the negotiations or in the contract itself. I think therefore that under the contract the defendant is not bound to make any provision of the character demanded by the complainants.

But it is urged that a duty or obligation is cast upon the defendant by the law to see to it that in case of dissolution at some distant and indeterminate period of time, the current assets of the corporation shall be maintained at such a value over and above the liabilities as will protect the complainants. There is no statutory warrant for this contention, nor do the complainants' counsel call my attention to any case in which such a posi-

tion was taken and was maintained. On the contrary, the principle seems to have been decided by the English court of appeal in *Lee* v. *Neuchatel Asphalt Co.* (*1889*), *41 C. D. 1; 58 L. J. Ch. 408*. That was a bill by a common stockholder to restrain a corporation from paying a dividend out of profits for a certain year upon the ground that the fixed capital of the company was an asphalt deposit which was being reduced from day to day and so became what was termed a wasting asset, the theory being that if the dividends continued the fixed capital would be eventually entirely consumed in dividends. It was decided that when the assets of a company are in the nature of a wasting character depreciated by efflux of time or exhaustion of material, such as mines, patents or leaseholds, if, for the purpose of carrying on the business of the company and getting a profit the annual consumption of that capital is necessary, then apart from any regulation in the articles, there is no obligation by law or statute, to create a reserve fund out of revenue to recoup the wasting nature of the capital, and that the division among the shareholders of the surplus produced from such wasting property, after retaining enough to pay the company's creditors, is not a return of capital and as such prohibited by the statute.

This case did not reach the house of lords, nor has the principle been decided, so far as I can find, by the English court of last resort, but it has been followed and approved in many cases, and its principle is practically adopted by our court of errors and appeals in the case of *Goodnow* v. *American Writing Paper Co., 73 N. J. Eq.* (*8 Buch.*) *692*.

This appears to me to be decisive of the case as now presented; if there are no other facts than those which are here mentioned, the defendant must have the decree.