SOMMERVILLE, J.
The statement of this case will be found in our opinion herein of date January 30, 1911, reported in 127 La. 919, 54 South. 286.
[1] Act No. 159 of 1898, § 1, par. 2, gives to a stockholder of a corporation the right to apply to the courts for the appointment of a receiver to take charge of domestic and foreign corporations located here, “when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business, or by committing acts ultra vires, or by wasting, misusing, or misapplying the property or funds of the corporation.”
Plaintiff, a stockholder of defendant company, is here asking for the appointment of a receiver under thq section quoted. There was judgment in favor of plaintiff, and defendant appeals.
Our learned Brother’s reasons for judg *409 ment are found in the record. They are olear and convincing, and his judgment will be affirmed.
[3] Our Brother pitches his finding of gross mismanagement of the business of the corporation and of a misapplication of its funds by the directors upon the declaration by the board of directors of defendant company of a dividend of $35 per share, to be paid to the stockholders, which dividend was actually paid out of the capital stock of the corporation. Such payment, prior to 190S, could not have been legally made without the assent of all the stockholders. Cook on Corporations, §§ 3, 546, note. They “can lawfully be made only out of profits against the dissent of stockholders or creditors.” Id. § 546. And the Supreme Court of the United States has said that the term “profits,” out of which dividends alone can properly be declared, denotes what remains after defraying every expense, including loans falling due, as well as the interest on such loans. Mobile, etc., R. R. v. Tennessee, 153 U. S. 486, 14 Sup. Ct. 968, 38 L. Ed. 793. “An English court says that profits are the excess of the current gains over the working expenses, as shown by revenue accounts as distinguished from capital accounts.” Cook, § 546.
[2] And the statutory law of this state forbids the payment to stockholders of any portion of the company’s capital stock, regardless of the solvency of the company, or whether the company is domestic or foreign. Section 1 of Act No. 241 of 1908 reads as follows:
“Section 1. Be it enacted by the General Assembly of the state of Louisiana, that it shall be unlawful for any domestic corporation, or for any foreign corporation doing business in the state, to make or declare any dividend on its capital stock except from its actual and bona fide cash surplus of profits, or to divide, withdraw or in any manner to pay to the stockholders, any portion of the company’s capital stock.”
The penalty for violating the law provided for in section 2 is the payment of $1,000 to the state, and the forfeiture to do business in the state, by a foreign corporation.
[6] Defendant shows that plaintiff received his portion of the dividend referred to, and that he still retains in his possession the certified check issued by defendant therefor, and argues that plaintiff is thereby estopped from being heard to complain of the action of defendant in declaring and paying the dividend. There is nothing reprehensible in the conduct of plaintiff in this connection. The board of directors, of which he was not a member, declared the dividend, and sent to him a check for his share. Plaintiff is here complaining of such action as being illegal, and the check is evidence of what was done. The retention of the check under such circumstances will not be construed as a ratification by plaintiff of the thing being complained of by him.
[4] Defendant further argues that the dividend complained about was paid from the proceeds of the sale of oil, the product of defendant’s wells, and that such act on its part was legal, although that oij formed part of the capital stock of the company. And it refers to Cook on Corporations (6th Ed.) § 1486, where coal mines and other like properties were being exhausted by the working of them, yet dividends were properly declared by the companies owning them. Those cases do not appear to be parallel with the one at bar. The oil sold had been placed in tanks prior to the formation of defendant company, and it figures as part of the assets' of said company which went to form its capital stock. This capital should not have been depleted by selling the oil and distributing the proceeds. A different view, as suggested by Mr. Cook, might be taken of the wells themselves. Oil wells and mines may figure as representing parts of the capital stock of corporations, which, of course, are' owned for the express purpose of being worked, and it is the business of the owners to work them. They may *411 become exhausted and cease to be real assets. And, as Mr. Cook states, in such cases it is not necessary to set aside funds for the purpose of purchasing a new mine, and, we add, a new oil well.
[5] The payment of the dividend of $35 on each share was not only not intended by the board of directors to be paid out of the earnings or profits of the company; but, as stated by Mr. Mellon, the largest stockholder of defendant:
“The $35 dividend really represents liquidation and not earnings. * * * The only value remaining in the plant is salvage.”
And the evidence shows that Mr. Mellon had had a desire to wind up the affairs of the company for some time before this liquidating dividend was declared by the board and paid.
The method of dissolving and liquidating defendant company which appears to have been adopted by the board of directors of defendant is not authorized by the charter of defendant, and it is not in conformity with the laws of New Jersey or Louisiana.
We are of the opinion that the affairs of defendant company have been grossly mismanaged, and that the appointment of a receiver to take charge of the property in this state is rendered necessary for the protection of the minority stockholders, of which plaintiff is one, and the judgment appealed from is affirmed.