FEDERAL MINING AND SMELTING COMPANY, a corporation of the State of Delaware,

Defendant Below, Appellant,

*vs.*

ALBERT M. WITTENBERG, HARRY CONTENT and WALTER CONTENT, a co-partnership trading as H. Content and Company,

Complainants Below, Appellees.

*Supreme Court, on Appeal, Feb. 8, 1927.*

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS, and RODNEY, JJ., sitting.

*Andrew C. Gray* of the firm of Ward, Gray & Ward, and with him, *Elihu Root, Jr.*, of New York City, for appellant.

*Robert H. Richards*, for appellees.

PENNEWILL, C. J., delivering the opinion of the court:

This case is here on an appeal from the Court of Chancery, in which a decree was made by the Chancellor on May 17, 1926, *ante* *p.* 147, 133 *A.* 48, overruling a demurrer filed by defendant to complainants' bill of complaint.

The only assignment of error is the action of the Chancellor in overruling said demurrer.

The material facts are alleged at length in the bill of complaint and their truthfulness admitted by the demurrer filed below. Those facts are clearly and sufficiently stated in the Chancellor's opinion, and it is not deemed necessary to repeat them here at length.

The defendant company is what is known in the law as a "wasting asset corporation." It was incorporated under the General Corporation Law of the state June 23, 1903, and having, at the time suit was brought, a total par value of issued preferred stock of $12,000,000, and of common stock of $6,000,000. The

amount of capital deficit as of the end of 1925 is not stated. As of the close of 1924, the balance sheet shows it was $7,624,661.95. As of the close of the preceding year it was more than $1,000,000 less than this sum. The balance sheet as of December 31, 1924, shows the capital assets to have been so depleted that they were then insufficient to pay on the preferred stock, upon liquidation, the par value thereof. The net earnings of the defendant corporation for 1925 amounted to $3,440,000. The deficit, therefore, in the paid-in or invested capital on January 6, 1926, was, apparently, at least $4,000,000.

On the date last mentioned, notwithstanding there was a capital deficit admitted by the defendant, the board of directors of the defendant company adopted a resolution authorizing the payment of accrued dividends (nineteen and one-fourth per cent.), and the current quarterly dividend of one and three-fourths per cent., on the preferred stock, and a dividend of $10 per share on the common stock, out of earnings prior to 1926; and it further resolved that until further action of the board, it should be the policy of the corporation that one-half of current net profits for each year including 1926, remaining after all charges except depletion, and after the payment of all accrued and unpaid dividends on the preferred stock, be paid out as dividends on the common stock.

The preamble to these resolutions recited that the company's net profits for 1925 amounting to $3,440,000 after all charges except depletion, are available for dividends on the preferred and common stock despite the fact that the books of the company show a deficit, and that after preferred stock dividends were provided for the company might from time to time distribute its remaining net profits as a dividend on the common stock without first making any deductions for depletion or establishing a reserve sufficient, in the event of liquidation of the company, to pay off the preferred stock at the par value thereof and unpaid dividends.

The complainants prayed for an injunction against the payment of the declared dividend of $10 a share on the common stock; and that the defendant be enjoined from hereafter paying any dividends on the common stock until it shall have set up and accumulated a reserve equal to the sum by which the invested cap-

ital has been impaired by the depletion of the ore bodies and that thereafter the defendant be enjoined from paying any dividends on the common stock when such payment would impair the invested capital.

An alternative prayer asked for an injunction against the payment of common stock dividends until a reserve has been set up equal to the difference between the net value of the present assets and the par value of all outstanding preferred stock and thereafter that no common stock dividends shall be paid if as a result thereof net assets will be reduced below the par of all the outstanding preferred stock.

The defendant's business is that of mining, smelting, etc., of mineral ores and marketing the finished products. Since its inception, the company has acquired numerous mines many of which have been exhausted. Its certificate of incorporation shows that the company has general powers other than mining but its operations have been confined to that business.

From 1904 to 1908, inclusive, dividends were paid on the common stock aggregating forty-seven and one-half per cent. of par. Since then, nothing has been paid on the common stock. Since its organization, the defendant corporation has paid as dividends on its preferred stock the sum of $16,072,213.16. At the present time there are accumulated unpaid back dividends on the preferred stock amounting to $19.25 per share.

The contention of the complainants is, "that the defendant has no legal right so long as any shares of its preferred stock are outstanding, to pay dividends on its common stock when and so long as the amount of the defendant's net assets is less than the amount of its paid-in or invested capital."

The complainants claim they are entitled to the injunctive relief prayed for because of contract rights growing out of the relation between the preferred stockholder and the corporation.

They say:

"There is impliedly written into every corporate charter of this state, as a constituent part thereof, every pertinent provision of our Constitution and statutes."

And they claim that the pertinent provisions of the Delaware statutes and the defendant's certificate of incorporation are the following:

*Section* 34 of the *General Corporation Law* (*Revised Code* 1915; § 1948), which provides that:

"The directors of every corporation created under this chapter shall have power, after reserving over and above its capital stock paid in, such sum, if any, as shall have been fixed by the stockholders, to declare a dividend among its stockholders of the whole of its accumulated profits, in excess of the amount so reserved, and pay the same to such stockholders on demand; provided, that the corporation may, in its certificate of incorporation, or in its by-laws, give the directors power to fix the amount to be reserved."

And the following provision from defendant's certificate of incorporation:

"In the event of any liquidation, or dissolution, or winding up, whether voluntary or involuntary, of the corporation, the holders of the preferred stock shall be entitled to be paid in full both the par amount of their shares and the unpaid dividends accrued thereon before any amount shall be paid to the holders of the common stock, and after the payment to the holders of the preferred stock of its par value and the unpaid accrued dividends thereon the remaining assets shall be divided and paid to the holders of the common stock according to their respective shares."

Because of these provisions of statute and charter it is insisted that the preferred stockholders of the corporation derived two rights, viz.:

"First, the right that no dividends shall be paid to the common stockholders of the defendant except out of some amount of money which exists 'over and above' the paid-in capital of the defendant.

"Second, the right that there shall be no distribution of the defendant's paid-in or invested capital to its common stockholders until after such distribution has been made to preferred stockholders to the extent of the par value of their shares and the unpaid dividends accrued thereon."

It is contended that where the statute under which a corporation is created and organized contains a specific grant of power to corporations to pay dividends, such grant contains the full measure of power acquired by corporations created under the statute with respect to the subject of the payment of dividends, and they possess no other or greater power in this regard than such as is granted

by the statute, with all the limitations that are attached to the grant.

The proposition of law as stated is sound if it means that the powers of a corporation may be implied as well as expressed.

As was said by Chief Justice Marshall in the *Dartmouth College Case,* 4 *Wheat.* 518, 636, 4 *L. Ed.* 629:

"A corporation * * * being the mere creature of law, * * * possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence."

In another cited case, the court said:

"Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others." *Thomas v. West Jersey R. Co.,* 101 *U. S.* 71, 25 *L. Ed.* 950.

We do not understand that the defendant disputes these general propositions of law.

We think the defendant not only concedes the soundness of these general propositions relied on by complainants, but agrees that it would not have the right to pay any dividends on its common stock when such payment would make the net assets less than the paid-in capital, unless the doctrine known as the "wasting asset doctrine" is the law of the state, and applicable to this case.

We understand the argument of the defendant on this point to be that the pertinent statute law of this state is but a codification or enactment of the common law; that there was at the time of the enactment of our General Corporation Law a well-recognized exception to the common law respecting the payment of dividends on corporation stock which exception permitted the payment of dividends on the stock of a wasting asset corporation, such as a mining company, even though the paid-in or invested capital of the corporation was impaired; and that such exception being a part of the common law was engrafted upon the pertinent statute law, and must be so treated by the court when considering whether dividends can be legally paid on the stock of such a corporation.

The defendant says that *Section 34* is an affirmative provision permitting the payment of dividends under certain circumstances;

it is permissibe but not exclusive; that *Section* 35 of the General Corporation Law (*Revised Code* 1915, § 1949) is the only statute that contains a prohibition against the payment of dividends on corporation stock, and it provides that:

"No corporation created under the provisions of this chapter, nor the directors thereof, shall make dividends except from the surplus or net profits."

The complainants' reply to this is, that:

"Inasmuch as *Section* 34 is the section to which resort must be had to determine whether the financial condition of a Delaware corporation is such as to permit the payment of dividends (*Peters v. Mortgage Co.*, 13 *Del. Ch.* 11, 114 *A.* 598), and the method of ascertaining whether a 'surplus or net profit,' as those words are used in *Section* 35, exists, is prescribed by *Section* 34, it is of no importance whatsoever that the statutes in other American states referred to are similar to *Section* 35 of the Delaware law, inasmuch as that section, for the pertient purposes of this case, is governed by *Section* 34."

*Section* 13 of the *General Corporation Law* (29 *Del. Laws, c.* 113, § 7), after providing for the payment of preferred dividends, says:

"A dividend upon the common stock may then be paid out of the remaining surplus or net profits. * * *."

The position of the defendant with respect to the payment of dividends is stated in its brief as follows:

"It is conceded that the general rule of the common law in the United States forbids the payment of dividends except from an excess of assets over liabilities, including the capital stock. But the defendant appellant contends that this rule of the common law is subject to a well established exception in the case of wasting asset companies, that is to say, companies engaged in the exploitation of such assets as mines, oil wells, leases, patents and the like. The defendant appellant contends that the common law permits such companies to pay dividends without regard to deficits caused by the depletion of their mines or the lapse of the period covered by their leases or patents, and that the common law rule has been codified and re-enacted in the statutes of the state of Delaware."

The leading case cited in support of the wasting asset doctrine is the English case of *Lee v. Neuchatel Asphalt Co.*, 41 *Ch. Div.* 1 (1889); 58 *L. J. Rep. Chan. Div.* 408. It is upon this decision that the other cases, including some in this country, are very largely based. The other cases and text-books cited are the following:

*Excelsior Water & Mining Co. v. Pierce,* 90 *Cal.* 131, 27 *P.* 44, decided in 1891; *People v. Roberts,* (1898) 156 *N. Y.* 585, 51 *N. E.* 293; *Boothe v. Summit Coal Mining Co.,* (1909) 55 *Wash.* 167, 104 *P.* 207, 19 *Ann. Cas.* 1255; *Mellon v. Mississippi Wire Glass Co.,* 77 *N. J. Eq.* 498, 78 *A.* 710; *Van Vleet v. Evangeline Oil Co.,* (1911) 129 *La.* 406, 56 *So.* 343; *Stratton's Independence v. Howbert, (Dist. Ct. Colo.* 1912) 207 *F.* 419; *Morawetz on Private Corporations,* § 442 (1886); *Clark and Marshall on Private Corporations, Vol.* 2, 1593 (1901); *Volume* 10, *Cyc. Law and Procedure* (1904) 553; *Thompson Com. on Private Corporations,* (1910) 118; *volume* 14, *Corpus Juris* (1919) 802; *Fletcher Cyc. Law of Private Corporations,* (1919) 6104; *Cook on Private Corporations,* (1923) *Eighth and Last Ed., Vol.* 2, 1903; *Hatfield on Modern Accounting,* (1919) 215.

We will not attempt to analyze the authorities cited in support of the wasting asset rule, and it is not necessary to do so because it has been very thoroughly done by the Chancellor in his opinion, *ante p.* 147, 133 *A.* 48.

There can be no doubt that the wasting asset rule declared in the *Lee-Neuchatel Case* in 1889, and before that recognized by Morawetz in his work above mentioned, has been approved and followed in other cases both in England and this country.

The complainants say:

"There are cases that have decided that a wasting asset corporation may pay dividends, under the facts and circumstances of the particular case, but these cases are not such as to enable a general universally applicable rule to be deduced. Every case must be decided upon its own peculiar facts and so must the case at bar be decided."

As before stated, we are not deciding that the wasting asset doctrine is applicable to the present case. So far we have said only, that such a doctrine has been approved and declared by courts in this country and England. The complainants say the *Lee-Neuchatel Case* has no application to the case at bar, for the reason, among others, that in that case there was no capital deficit, and no preference given to any stock except in the payment of dividends. It is sought to distinguish all of the other cases cited by the defendant on the ground that the facts or statutes involved were different from those in the present case, or because they were decided on different grounds. In some it did not appear that the capital was

impaired, or that there was a preferential stock. Some were tax cases, and in others there was no such contract as existed between preferred stockholders and the company in the case before this court in respect to the application of assets in the event of dissolution.

There is one case, however, that is more analogous to the one before the court than any other. It is the New Jersey case of *Mellon v. Mississippi Wire Glass Co., supra,* decided by the Court of Chancery in 1910, and upon this the defendant seems to rely with much confidence.

The corresponding statute law of that state is strikingly similar to our own. The Vice Chancellor relied on the principle decided in the *Lee-Neuchatel Case,* and held that there was no obligation by law or statute to create a reserve fund out of revenue to recoup the wasting nature of the capital. More extended reference will be made to this case later in our opinion.

We have spoken of the wasting asset doctrine at some length so as to present clearly the contentions of the defendant, and the basis of its argument, because it is upon such doctrine alone that reliance is placed. In our view of this case it is immaterial that the doctrine contended for by the defendant has been recognized by courts where the statute law is essentially different from ours. Neither is it of importance in the decision of the case that such recognition preceded the enactment of our General Corporation Law. The authorities cited might be very persuasive if the question before us was the wisdom or propriety of adopting, by judicial decision, the wasting asset doctrine in this state. But the crucial question, we think, is whether corporations known as wasting asset corporations are excepted from the operation of our statute law with respect to the payment of dividends.

We have stated the pertinent statute law of the state in presenting the contentions of the complainants. Such law does not by its language except from its operation and effect any class of corporations created thereunder. But the defendant claims that the wasting asset doctrine, which has been recognized as an exception to the rule of the common law, and, therefore, became a part of the common law, was ingrafted upon the statute law at the time of its enactment; or, that the statute law was a codification of pre-existing common law and subject to the exception.

In reply to such contention or argument we say:

1. The recognition of said doctrine by an eminent text-writer, Mr. Morawetz, as well as by one or two courts in England and a like number in this country, before the enactment of the pertinent statute law, does not convince us that such doctrine was thereby established as a part of the common law of this state.

2. Even if the doctrine or rule contended for was the common law of the state when the statute was enacted it cannot be regarded as engrafted upon or read into a statute that is clearly opposed to the doctrine. There cannot be an effective and operative common law that is essentially different from a clearly expressed statute law. We think the position of the complainants in this regard is sound, viz.:

"That there being no exception in the Delaware statute in favor of wasting asset corporations, the court cannot usurp the function of the Legislature by reading into the language of the Legislature an exception that is not expressed"—and we may say, an exception that is clearly at variance with the language used.

After all, this question resolves itself into a consideration of what the Legislature meant by the statute in question. The intention of the lawmakers is to be ascertained from the language they employed. It will not be claimed that there is anything in the language of the law that expresses or even indicates an intention to except from its operation wasting asset corporations. The one fact that makes most of defendant's authorities inapplicable is that the statute laws, or the facts involved, were different from those in the present case. In those cases the wasting asset doctrine was adopted, not because it was codified into or ingrafted upon a statute law like ours, but because there was nothing in the statute law that was opposed to its adoption. The decisional law was not contrary to the existing written law. There are but two cases that are not covered by this general statement, viz.: *The Excelsior Mining Case* in California, and the *Mellon Case* in New Jersey.

In the former case the statute prohibited the making of dividends except from surplus, and the payment to stockhoders of any part of the capital stock. A large part of the plaintiff company's capital consisted of property other than its mine which had been but slightly encroached upon. The court cited with approval

Morawetz and the *Lee-Neuchatel Case*, but said: "There is nothing to show that the capital of plaintiff has been impaired."

In the *Mellon Case*, while the pertinent statute law was practically the same as ours in respect to the payment of dividends, the specific question before the court was, whether, under the charter contract or the law, the defendant company was required to establish a reserve fund for the protection of preferred stockholders. The question here is, whether the company can pay dividends on its common stock when its net assets are less than the paid-in or invested capital. The setting up of a reserve is not the only way by which the net assets can be kept equal to capital. It may be done, and often is done by the purchase of other properties.

The Vice Chancellor in the *Mellon Case* relied on the *Lee-Neuchatel Case*, and the New Jersey case of *Goodnow v. American Writing Paper Co.*, 73 *N. J. Eq.* 692, 69 *A.* 1014, in which he says, the doctrine laid down in the English case "is practically adopted by our Court of Errors and Appeals." In the *Goodnow Case*, the court said:

"The value of the present assets exceeded the value of the actual assets with which the company began business."

It will be noted that in the *Mellon Case*, as in all the cases in this country and in England cited by the defendant, the recognition of the wasting asset doctrine is based on the reasoning of the *Lee-Neuchatel Case*, in which there was no depletion of assets, and nothing in the law that prevented the payment of dividends out of capital. And so Lord Justice Lindley could very well say, in the last mentioned case:

"If it was a payment out of capital it was such a payment out of capital as was not prohibited by law."

After a careful examination of the authorities the court conclude that there are none which distinctly hold that it is permissible, in the face of a statute law like ours, to pay dividends on common stock when, as in this case, there is an outstanding issue of preferred stock, the capital is greatly depleted and the net assets are less than the paid-in or invested capital.

The court's opinion is based on the particular facts and the statute law applicable thereto.

We hold that under the charter contract existing between the defendant company and the complainants as preferred stockholders, of which contract the pertinent statute law forms a part, dividends cannot be paid on the common stock when the capital of the company is greatly depleted and its net assets are less than its paid-in capital. This is the sole question to be determined by this court.

Whether corporations engaged in the exploitation of wasting assets shall be excepted from the operation of our law is a question for the Legislature of the state to decide. It may be fortunate that the Legislature is now in session.

For the reasons above given, the decree of the Chancellor will be affirmed.

NOTE.—This cause was remanded to the court below for further proceeding, and after answer filed by the defendant full and final hearing was had on bill, answer, testimony of witnesses and exhibits. For report of the case on final hearing below see *ante p.* 351.