CATHARINE F. CORBETT, Executrix of the Estate of
George W. Corbett, deceased,

*vs.*

McCLINTIC-MARSHALL CORPORATION, a corporation organized
and existing under the laws of the State of Delaware.

*New Castle, June* 4, 1930.

166

*Robert H. Richards*, and *Owen J. Roberts*, of Philadelphia, Pa., for complainant.

*Clarence A. Southerland,* of the firm of Ward & Gray, and *George Wharton Pepper,* of Philadelphia, Pa., and *John G. Buchanan,* of Pittsburgh, Pa., for defendant.

THE CHANCELLOR. The grounds of demurrer are four in number. They present, however, only two questions.

The first question is—were the directors required to approve only such annual statement of assets and liabilities submitted to them as would reflect the fair present value of the assets; or, conversely, were they permitted under the language of the redemption clause of the preferred stock article of the charter, to accept the values placed upon the assets by the books and at which they were being carried, regardless of the relation which such values might bear to the true or fair value?

The second question is, assuming that the directors were required to approve only a statement showing the present or true value of assets, as contended by the complainant, yet is the complainant entitled to compel the corporation to have its directors approve a statement prepared on such basis, a thing which the bill says they should but never have done, and having done it, or in the directors' default the court having in substance done it for them, then compel the defendant to redeem her stock at the figure which such revised valuation would disclose as the proper one?

The second question will be considered first. The complainant takes the view that once the directors have resolved to redeem, they must go forward to the end of the process; and, if the price basis upon which they resolved to redeem is an indefensible one, they, or the court for them in case they neglect to act, must find the new and just price and the redemption process must then proceed on the basis of such price. This contention is not acceptable.

The directors are the ones upon whom the contract, which is embodied in the certificate of incorporation, casts the duty of determining when and the price at which redemption shall take place. The determination to redeem is inseparably linked with the price to be paid. If the directors resolve to redeem at a given price, the terms of the contract neither in their literal interpreta-

tion nor in their reasonable implications, lend any countenance to the idea, that redemption and price are so unrelated to each other that the directors intend the former to proceed regardless of their view with respect to the latter. It is not only possible but quite probable that the judgment of the directors would approve a redemption at one price but strongly disapprove of redemption at another and higher price. If the complainant is right in her contention in this case, this court would have to say that because the directors deemed it wise for the corporation to redeem the complainant's stock at $323.21 per share, it must be conclusively presumed that they would deem it to be prudent and would desire to redeem her stock at nearly four times as much. The price to be paid is so integral a part of the redemption resolution, that it is impossible to see how the judgment of the directors can be said to be so unalterably expressed in favor of the redemption that they intended it to proceed regardless of the price they approved of. The directors have never in the exercise of that discretion which the corporate contract confers upon them, resolved that the complainant's stock should be redeemed at a larger figure than is disclosed by the annual statement of December 31, 1928. It would be an usurpation of their discretion for this court to assume to compel them to so resolve, or itself in effect to make the resolution for them.

This conclusion being reached, the defendant argues that the demurrer should be sustained without respect to the merits of the first question, for, its solicitors argue, if it be conceded that redemption can be only on the basis of the complainant's contention as to price, yet there never having been a determination to redeem on that basis, which as just stated is a pre-requisite, her suggested basis presents a purely moot question. All, it is said, the complainant would be entitled to if she be conceded to be right in her contention upon the question of price and the principle underlying its ascertainment, would be the right to continue in her status of preferred stockholder. I agree with this view. It would dispose of the bill if the prayer thereof were confined to the particular relief prayed for. But the bill does not stop with the prayers for specific relief. It contains a general prayer for such other and further relief as the nature of the case

may require. In view of the fact that the bill shows that the defendant has notified the complainant in substance that she is to be denied the status of a preferred stockholder in the future, the nature of the case, if the complainant be right in her claims touching the alleged illegality of the proposed redemption, requires a decree that, though she cannot on the facts alleged enforce a redemption in accordance with her specific prayers, yet the defendant is bound to treat her as a preferred stockholder until proper redemption of her stock has been effected.

The complainant's right to this sort of relief under the general prayer is, of course, dependent on whether the defendant acted contrary to the charter's terms, as she alleges, in calling her stock. And so, in order to make a proper disposition of the demurrer, it becomes necessary to proceed to consider whether or not the complainant's contention with respect to the principle upon which the redemption price was fixed is sound in law. If it is, she is entitled to no relief; if it is not, she is entitled to a decree establishing her right to be treated as a continuing preferred stockholder.

I recur, then, to the first question. This question is expressed by the defendant in three ways by its three grounds of demurrer as follows:

"1. That it appears from the bill of complaint that the preferred stock of the complainant referred to therein was redeemed by the defendant at its book value, as shown by the last annual statement of assets and liabilities of the defendant submitted to and approved by the board of directors.

"2. That it is immaterial that the board of directors knew that the valuations at which a part of the assets were shown in the said statement were below the then and present fair value of such assets, because it appears from the bill of complaint that the said statement set forth the amounts at which the assets were valued in the books of accounts, and the book value so shown could properly be approved by the board of directors if it represented the original cost of the assets with adjustments of that cost in accordance with proper and consistent bookkeeping, though it bore no relation to the fair value of the assets as such value might vary from time to time.

"3. That the allegations of fraud set forth in the bill of complaint are insufficient, being wholly dependent upon an alleged disparity between the book value and the fair value of the assets on December 31, 1928, which latter value is immaterial."

The cause of demurrer numbered two contains the words,—"if it represented the original cost of assets with adjustments of that cost in accordance with proper and consistent bookkeeping."

The use of these words is not justified by any allegation found in the bill and must therefore be disregarded. The second cause of demurrer should therefore read as follows:

"2. That it is immaterial that the board of directors knew that the valuations at which a part of the assets were shown in the said statement were below the then and present fair value of such assets, because it appears from the bill of complaint that the said statement set forth the amounts at which the assets were valued in the books of account, and the book value so shown could properly be approved by the board of directors, though it bore no relation to the fair value of the assets as such value might vary from time to time."

The bill admits that the annual statement from which the redemption price of $323.21 was calculated correctly sets forth the amount or amounts at which the assets were then and immediately theretofore valued in the books of account of the corporation.

The question under this branch of the case, then, turns on the meaning of "book value of the stock, as shown by the last annual statement of assets and liabilities of the company submitted to and approved by the Board of Directors." These words are found in the preferred stock clause of the certificate of incorporation. The entire clause expresses a contract between the corporation and its preferred stockholders, for a corporate charter, together with the pertinent constitutional and statutory law, forms a contract. *Peters v. U. S. Mortgage Co.*, 13 *Del. Ch.* 11, 114 *A.* 598; *Morris v. Public Utilities Co.*, 14 *Del. Ch.* 136, 122 *A.* 696; *Federal Mining & Smelting Co. v. Wittenberg*, 15 *Del. Ch.* 409, 138 *A.* 347, 55 *A. L. R.* 1; *Davis v. Louisville Gas & Electric Co.*, 16 *Del. Ch.* 157, 142 *A.* 654; *Gaskill v. Gladys Belle Oil Co.* 16 *Del. Ch.* 289, 146 *A.* 337. The question then is, what does the language just quoted from the contract mean?

What is "book value" as used in this charter? The contract refers to a document from which book value is to be ascertained, that is to say to "the last annual statement of assets and liabilities of the company submitted to and approved by the Board of

Directors." When such statement is approved, the book value will emerge from a mere calculation. So that the term book value, for the present purposes, is a thing that automatically springs from a statement, and the latter becomes the center around which the controversy as to the meaning of book value evolves. But I take it that the word "book" in book value indicates that the statement is to reflect the condition of the company's books. It would appear entirely reasonable to thus allow the word book to transfer some of its modifying meaning to the statement of assets and liabilities, for when such language as this is used I think the common understanding of men is that what is meant is a value disclosed by a statement that reveals the money measure of assets and liabilities as they are shown on the books of the company. So that we come to a source back of the statement, viz., to the books, for an ascertainment of the items and figures from which book value is ultimately derived.

The bill admits that the statement correctly reflects all the items of assets and their values as the same are carried on the company's books. The question therefore is whether or not, if the books carry assets below their present fair value, the directors are justified in approving an annual statement on the basis of such book values.

The complainant argues, and correctly so, that the duty of approving which the charter lays on the directors, involves the exercise by them of their judgment and that such judgment must be reasonably and not arbitrarily exercised. It is conceded that for the corporation's general purposes, the books may quite properly carry assets at a figure less than their present fair value, and that an annual statement based on books that so carry assets may very well be taken as a fair reflection of the corporation's financial condition for all general purposes. But, says the complainant, when it comes to redeeming the preferred stock, it would be highly improper, because unjust and inequitable, for the directors to approve of a statement made from books that are kept on any such basis. If the complainant be right, then when it is proposed to redeem preferred stock, it would be the duty of the directors, if the books are kept on a cost basis which is less than present fair or market value, to do one of two things—

either to revise the valuations on the books and direct the preparation of a regular annual statement on the basis of such revision, or to prepare two annual statements, one that is based on the book values as they are and another one based on the book values as they are revised. It seems to be plain that the latter course, the preparation of two statements, cannot be a proper one, for the charter's language seems clearly to indicate that it is only a single statement, rather than one of two statements, to which reference is to be made for the calculation of the preferred stock's redemption price. That statement is the last annual one preceding the redemption. The annual statement referred to by the charter's language must be the regular one that is prepared in the ordinary course of corporate practice and which is customarily sent out to the stockholders. I cannot therefore agree with the view of the solicitors for the complainant that under the provisions of this contract there can be no valid reason against the approval of one statement by the directors of the assets and liabilities as shown by the books for the general purposes of the corporation, and the approval of another statement of assets and liabilities as shown by a revision of the books for the particular purpose of redemption of the preferred stock.

Inasmuch then as the contract refers to the last annual statement of assets and liabilities for the measure of the preferred stock's value, and the directors did in fact value the complainant's stock according to such statement, the next question to consider is whether it was a violation of the company's rights for the directors to exercise their discretion of approval by accepting that statement when the books from which it was prepared put a figure on the assets below their present fair value. In other words, were the directors, before effecting a redemption of preferred stock, bound to go back into the books and order a write-up of the values therein given to the assets so as to bring them in line with present worth?

The charges of fraud in the bill are to the effect that in approving the statement the directors well knew the assets were shockingly undervalued in the books below their present fair value, that they therefore either fraudulently failed to exercise

any judgment whatever, or by reason of their ownership of common stock fraudulently ignored their knowledge of the gross undervaluation in furtherance of their own purposes and to benefit themselves as common stockholders and with intent to cheat and defraud the complainant as a preferred stockholder.

If the sole evidence in support of these allegations of fraud were the alleged undervaluations in the books, and if it appeared that the undervaluations are entirely consistent with and justified by sound principles of corporate accounting, as appears to be the contention of the defendant, I would be called upon to make reply to the defendant's case as it was put in the argument. But the bill's allegations, to which we are confined for the facts, fails to show the case to be of that sort. All that the bill shows with respect to this aspect of the matter is that in approving of the books the directors have fraudulently accepted gross undervaluations and were prompted to do so in order to benefit themselves as larger holders of common stock. A charge of this sort falls far short of excluding from its scope every suggestion of fraud other than the approval of undervaluations which arise in accordance with sound and accepted corporate practice.

This being so, the demurrer should not be sustained and the complainant thereby denied the opportunity to show the true facts concerning the valuations approved by the directors. Before a satisfactory answer can be given by the court to the question of whether directors were justified in approving the values at which the assets were then being carried, or whether they should have revised those values, a fuller and more definite set of facts is required. Apparently this can be had only by allowing the cause to proceed in the regular course.

The views herein expressed make it unnecessary for me to consider the question which the solicitors for the defendant argued, viz., whether the directors must be held to have acted in good faith and with entire justification in approving book valuations of assets if the same are carried at original cost with adjustments of that cost in accordance with proper and consistent bookkeeping. Looking to the bill alone for the case, as I must, the question which the argument of the defendant presents is an hypothetical one. I made one try at dealing with it, thinking

I should in the interest of expedition; but I found myself getting into so many supposititious situations that I concluded the most satisfactory thing to do was to confine myself to the case as it is presented on the record before me.

The demurrer will be overruled. If, however, the defendant can so shape its pleadings as to invite a decree in accordance with its willingness expressed at the bar to have the complainant continued in her status of preferred stockholder, I can see no reason why such a decree should not be entered and the expense of further litigation thereby saved, for the views expressed by me in answer to the first point raised by the demurrer show, that if the complainant should prevail after a full hearing which obviously must entail considerable expense and annoyance, she could not obtain any more relief than the simple declaration that she is a preferred stockholder, entitled to be treated as such, notwithstanding the attempted redemption of her stock.

Order overruling the demurrer.